# EXHIBIT 1

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of April 17, 2024 is entered into by and among Builder Services Group, Inc., a Florida corporation ("Buyer"), Nate's Insulation, LLC, a Missouri limited liability company ("Nate's Insulation"), NaCo Investments LLC, a Missouri limited liability company ("NaCo"), and Nathanial G. Scrivner, an individual resident of the state of Missouri (the "Equity Holder", and Equity Holder, Nate's Insulation and NaCo, each a "Seller" and collectively, the "Sellers").

WHEREAS, on the terms and subject to the conditions set forth herein, Sellers desire to sell to Buyer, and Buyer desires to purchase from Sellers, substantially all of the assets comprising Sellers' insulation installation, distribution and services business (the "Business").

NOW, THEREFORE, in consideration of the representations, warranties, covenants and agreements contained herein, the parties hereto, intending to be legally bound, agree as follows:

## I
## PURCHASE AND SALE

1.01 Purchase and Sale of Assets.

(a) Assets and Properties to be Sold and Purchased. On the terms and subject to the conditions of this Agreement, at the Closing, Sellers shall sell, assign, transfer, convey and deliver to Buyer and Buyer shall purchase, accept and assume from Sellers, all of Sellers' right, title and interest in and to the Purchased Assets, free and clear of all Liens.

(b) Excluded Assets. Notwithstanding anything to the contrary contained in this Agreement, the Purchased Assets shall not include, and Sellers shall retain all right, title and interest to the Excluded Assets.

1.02 Liabilities of Sellers.

(c) Liabilities Assumed by Buyer. On the terms and subject to the conditions of this Agreement, at the Closing, Buyer shall assume only the following Liabilities of Sellers (the "Assumed Liabilities"), and no other Liabilities: (i) the Assumed Accounts Payable; and (ii) executory obligations arising following the Closing Date in the ordinary course of business under the Purchased Contracts, except for any and all Contractual Pre-Closing Liabilities.

(d) Liabilities Not Assumed by Buyer. Notwithstanding anything in this Agreement to the contrary, other than the Assumed Liabilities, Sellers shall retain and be responsible for all Liabilities of Sellers and neither Buyer nor any Affiliate of Buyer shall assume, or in any way be liable or responsible for or take subject to any Liabilities of the Business, Equity Holder, Sellers or any Affiliate of Sellers, (collectively, the "Excluded Liabilities"). Without limiting the generality of the foregoing, the Excluded Liabilities shall include the Liabilities of Sellers listed on Exhibit 1.02, whether or not such Liabilities are disclosed in any of the representations and warranties in this Agreement, on any schedule of Sellers' Disclosure Schedule or otherwise.

1.03 Purchased Contracts. To the extent that any Purchased Contract is not capable of being assigned, transferred, subleased or sublicensed without the consent or waiver of the other party thereto or any third party, or if such assignment, transfer, sublease or sublicense (an "Assignment") would constitute a breach thereof or a violation of any Law, this Agreement shall not constitute an Assignment thereof or an attempted Assignment thereof and the Purchased Assets shall not include such Purchased Contracts, unless

1

1.07    Allocation.  The Purchase Price to be paid by Buyer to Sellers (and all other items required to be included under the Internal Revenue Code of 1986, as amended (the "Code")) shall be allocated among the Purchased Assets in accordance with the methodology set forth on Exhibit 1.07.  The parties agree to (i) file all Tax Returns and claims and other statements consistent with such allocation, and (ii) not make any inconsistent statement or take any inconsistent position on any Tax Returns, in any refund claim, during the course of any IRS or other Tax audit, for any financial or regulatory purpose, in any litigation or investigation or otherwise.  Each party shall promptly notify the other party if it receives notice that the IRS proposes any allocation different from the allocation agreed upon in accordance with this Section 1.07.

1.08    Withholding Tax. Buyer shall be entitled to deduct and withhold from the Closing Date Purchase Price or any other payment under this Agreement all Taxes that Buyer may be required to deduct and withhold under any provision of Tax Law. All such withheld amounts shall be treated as delivered to Sellers hereunder.

## II
## CLOSING MATTERS

2.01    Closing.  Subject to the terms and conditions of this Agreement, the consummation of the Transactions (the "Closing") shall occur on the date that is two (2) Business Days after the satisfaction or waiver of all conditions to the obligations of the parties to consummate such transactions (other than conditions that by their nature are to be satisfied at Closing, but subject to the satisfaction or waiver of such conditions at Closing) or such other date or time as Buyer and Sellers mutually agree to in writing (the actual date Closing occurs being the "Closing Date"); provided, that in no event shall the Closing occur prior to April 4, 2024 without the prior written consent of Buyer. The Closing shall occur through the mutual electronic exchange of all executed documents and other Closing deliverables required under this Agreement. The date on which the Closing occurs is herein referred to as the "Closing Date". For Tax purposes and for purposes of calculating the Actual Working Capital, Closing will be deemed effective as of 12:01 a.m. Eastern Time on the Closing Date.

2.02    Deliveries by Sellers.  At the Closing, Sellers shall deliver, or cause to be delivered to Buyer:

(a)    possession of the Purchased Assets;

(b)    a bill of sale in form and substance satisfactory to Buyer (the "Bill of Sale"), duly executed by Sellers, transferring the tangible Purchased Assets (other than titled property) to Buyer;

(c)    a bill of sale for the titled tangible personal property included in the Purchased Assets as well as the original title for each piece of titled tangible personal property, in form and substance satisfactory to Buyer ("Bill of Sale (Titled Property)"), each duly executed by Sellers;

(d)    an assignment and assumption agreement in form and substance satisfactory to Buyer (the "Assignment and Assumption Agreement"), duly executed by Sellers, effecting the assignment to and assumption by Buyer of the intangible Purchased Assets and the Assumed Liabilities;

(e)    a copy of the Escrow Agreement, duly executed by Nate's Insulation;

(f)    a certificate of the Secretary (or equivalent officer) of each of Entity Sellers certifying as to the resolutions adopted by the board of directors or other applicable governing body or Person of such Entity Seller and the Equity Holder authorizing the execution, delivery and performance of this Agreement and the Ancillary Agreements to which such Entity Seller is a party and the consummation of the Transactions;

(g) documentation (including related payoff letter(s) and UCC-3 termination statement(s)) evidencing the release, to be effected as of the Closing, of Liens on the Purchased Assets, and an executed payoff letter from the holders of any Indebtedness, setting forth the aggregate amount required to discharge all obligations under such Indebtedness (the "Payoff Amount"), wire instructions for the payment of such Payoff Amount, and providing for the release and termination all Liens on the Purchased Assets securing such Indebtedness automatically upon receipt of the applicable Payoff Amount;

(h) evidence satisfactory to Buyer that the Tail Policies have been obtained and are fully paid and bound in the form provided to Buyer;

(i) a lease for that certain real property located at 1396 Northwest View Rd., Eldon, MO in form and substance satisfactory to Buyer between Buyer and NaCo, duly executed by NaCo (the "Real Property Lease");

(j) an executed certificate of amendment to the certificate of organization of Nate's Insulation and such other documents necessary to amend Nate's Insulation legal name of Nate's Insulation and cancel all of Nate's Insulation registered trade names and documentation of corporate approval, as the case may be, for Nate's Insulation to amend its legal name and cancel such trade names, all reasonably acceptable to Buyer; and

(k) such other customary instruments of transfer or assumption, filings, or documents, in form and substance reasonably satisfactory to Buyer, as may be required to give effect to the transactions contemplated by this Agreement.

2.03 **Deliveries by Buyer.** At the Closing, Buyer shall deliver, or cause to be delivered to the applicable party or Person:

(a) to Sellers, (i) the Closing Date Purchase Price, (ii) a copy of the Bill of Sale, duly executed by Buyer, (iii) a copy of the Assignment and Assumption Agreement, duly executed by Buyer, and (iv) a copy of the Escrow Agreement, duly executed by Buyer;

(b) to the Escrow Agent, the Escrow Amount, which is credited as part of the Purchase Price;

(c) to the holders of the Indebtedness with respect to the Payoff Amount, the applicable portion of the Payoff Amount, which is collectively credited as part of the Purchase Price; and

(d) to NaCo, copy of the Real Property Lease, duly executed by Buyer.

### III
### REPRESENTATIONS AND WARRANTIES
### OF SELLER AND THE EQUITY HOLDERS

Sellers and the Equity Holder, jointly and severally, represent and warrant to Buyer as follows:

3.01 **Organization; Authority; Capitalization.**

(a) Each Entity Seller is a limited liability company duly organized, validly existing and in good standing under the Laws of the State of Missouri. Each Entity Seller is duly qualified to do business as a foreign entity and is in good standing in each state or other jurisdiction in which either the ownership or use of the Purchased Assets or the nature of the activities conducted by it requires such

certificates and other documentation required to qualify such sale as exempt, in each case, in accordance with applicable Law.

3.06    Absence of Certain Changes.  Since the date of the Most Recent Balance Sheet, the Business has been conducted in the Ordinary Course of Business consistent with past practice and there has not been any change, event, condition, or development that is, or could reasonably be expected to be, individually or in the aggregate, materially adverse to: (a) the business, results of operations, condition (financial or otherwise), or assets of the Business; or (b) the value of the Purchased Assets.

3.07    Undisclosed Liabilities.  No Seller has Liabilities except for (a) Liabilities set forth on the Most Recent Balance Sheet and (b) Liabilities incurred in the Ordinary Course of Business since the date of the Most Recent Balance Sheet and which are not, individually or in the aggregate, material in amount.

3.08    Purchased Assets; Title.  Each Seller has good, marketable and exclusive title to all of the Purchased Assets, free and clear of all Liens, except for Liens disclosed to Buyer on Schedule 3.08. Each item of tangible personal property included in the Purchased Assets is structurally sound, is in good operating condition and repair, and is adequate for the uses to which it is being put, and no item of tangible personal property is in need of maintenance or repairs except for ordinary, routine maintenance and repairs that are not material in nature or cost. The Purchased Assets are sufficient for the continued conduct of the Business after the Closing in substantially the same manner as conducted prior to the Closing and constitute all of the rights, property, and assets necessary to conduct the Business as currently conducted. None of the Excluded Assets are material to the Business.

3.09    Customers and Suppliers; Purchased Contracts.

(a)    Schedule 3.09(a) lists the fifteen (15) largest customers of, and the fifteen (15) largest suppliers to, each Seller during (i) the twelve-months ended December 31, 2023 and (ii) from January 1, 2024 to March 31, 2024 (stating for each the dollar volume of the sales or purchases, as the case may be).  No Seller has received any notice, and has reason to believe, that any of the customers or suppliers required to be disclosed on Schedule 3.09(a) has ceased, or intends to cease after the Closing, to use the goods or services of the Business or to otherwise terminate or materially reduce its relationship with the Business.

(b)    Each Purchased Contract is in full force and effect, is valid and enforceable in accordance with its terms and is not subject to any claims, charges, setoffs or defenses. No Seller is in default under any Purchased Contract and, to Sellers' Knowledge, no other party to any such Purchased Contract is in default or may soon be in default. No Seller has given to or received from any Person, any notice or other communication (whether oral or written) regarding any actual, alleged, possible or potential violation or breach of, or default under, any Purchased Contract. The Purchased Contracts constitute all of the Contracts to which each Seller is a party that are necessary for the continued conduct of the Business after Closing in substantially the same manner as conducted by such Seller before the Closing.

3.10    Compliance with Laws; Litigation; Permits.

(a)    Since each Seller's inception, such Seller has been, and is currently, in compliance with all Laws.

(b)    No Seller is subject to any judicial, governmental or administrative order, judgment or decree (other than those applicable to businesses or industries as a whole).  No litigation or Action of any kind or nature or governmental or administrative investigation or proceeding to which any Seller is or may be a party, or by which any of its assets may be bound, is now pending or, to Sellers'

"Environmental Laws" means all Laws relating to or addressing the environment, health or safety, which shall include the use, handling, treatment, storage or disposal of any Contaminant, or workplace or worker safety and health.

"Environmental Liabilities and Costs" means any and all Liabilities, regardless of when made or asserted or imposed or asserted to be imposed by operation of Law, for all environmental, ecological, health, or safety Liabilities or personal injury, property damage or natural resource damage, claims pertaining to the Business or any Seller relating to or arising from time periods or events occurring on or prior to the Closing Date, including (i) any uses of or occurrences on the Properties (or any real property previously owned, operated or leased by the Business or any Seller) whether or not such uses and occurrences were in compliance with then applicable Environmental Laws, (ii) the presence of any Contaminant or any Release or the threat of Release of any Contaminant on, at or from the Properties (or any real property previously owned, operated or leased by the Business or any Seller), (iii) the storage, handling, treatment or disposal of any Contaminant transported from the Properties (or any real property previously owned, operated or leased by the Business or any Seller) whether or not such transportation, storage, handling, treatment or disposal was in compliance with then applicable Environmental Laws, (iv) human exposure to any Contaminant, (v) non-compliance with any Environmental Laws or Permits required under Environmental Laws, (vi) any Remedial Action, and (vii) any reasonable fees and expenses of any environmental engineers and attorneys incurred by Buyer in connection with any Environmental Liabilities and Costs or the investigation thereof.

"Escrow Account" means an account established pursuant to the Escrow Agreement,

"Escrow Agent" means Regions Bank, an Alabama banking corporation.

"Escrow Agreement" means the escrow agreement in form and substance reasonably satisfactory to Escrow Agent, Buyer and Nate's Insulation to be executed at Closing.

"Escrow Amount" means an amount equal to ■■■■■■.

"Excluded Assets" means the assets listed in Section (b) of Exhibit 1.01.

"Fundamental Representations" means collectively the representations and warranties contained in Section 3.01 (Organization; Authority; Capitalization), Section 3.02 (No Conflicts), Section 3.03 (Subsidiaries), Section 3.05 (Taxes), Section 3.08 (Purchased Assets; Title), Section 3.11(b) (Accounts Receivable), Section 3.13 (Employees), Section 3.19 (Environmental), Section 3.21 (Brokers) and Section 3.22 (Solvency) of this Agreement.

"GAAP" means United States generally accepted accounting principles consistently applied.

"Governmental Authority" means any foreign, domestic, federal, territorial, state or local governmental authority, quasi-governmental authority, court, commission, board, bureau, agency or instrumentality, or any regulatory, administrative or other department, agency, or any political or other subdivision, department or branch of any of the foregoing.

"Indebtedness" means, with respect to any Person, all obligations (including all obligations in respect of principal, accrued interest, penalties, fees and premiums) of such Person, whether direct or indirect, (a) for borrowed money (including overdraft facilities), (b) for Liabilities secured by any Lien existing on property owned or acquired and subject thereto, (c) evidenced by notes, bonds, debentures or similar Contracts, (d) for the deferred purchase price of property, goods or services, including in connection with the acquisition of any business or non-competition agreement (other than trade payables or accruals incurred in the Ordinary Course of Business), (e) under capital leases (in accordance with GAAP), (f) in

25

"Properties" means all real property owned, leased, subleased or otherwise used or occupied by any Seller in the Business or in which any Seller has an interest.

"Purchased Assets" means all of the assets, properties and rights of every kind and nature, whether personal or mixed, tangible or intangible (including goodwill), wherever located (other than the Excluded Assets), which relate to, or are used or held for use in connection with, the Business including those listed on Section (a) of Exhibit 1.01.

"Reference Working Capital Lower Collar Amount" means ■■■■■■.

"Reference Working Capital Upper Collar Amount" means ■■■■■■.

"Release" means any direct or indirect release, spill, pumping, pouring, emission, emptying, discharge, dispersal, injection, placing, escape, leaking, leaching, migration, dumping, deposit or disposal of any Contaminant in or into any building, facility or the environment, whether intentional or intentional, known or unknown.

"Remedial Action" means all actions required of any Seller, the Business, or any predecessor by any Law and/or Environmental Law or any Governmental Authority under any Law and/or Environmental Law, including the types of activities covered by the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601, et seq., the Resource Conservation and Recovery Act of 1976, 42 U.S.C. §6901, et seq., and other comparable Laws and Environmental Law, including all rules and regulations issued or promulgated pursuant to any of the foregoing statutes, and any foreign, state or local Laws analogous to any of the foregoing, as amended, whether the activities are those that might be taken by a Governmental Authority or those that a Governmental Authority might seek to require of third parties under "removal," "remedial" or other "response" actions.

"Sellers' Disclosure Schedule" means the schedules attached hereto and delivered by Sellers and the Equity Holders to Buyer in connection with this Agreement.

"Sellers' Knowledge" means the knowledge of Equity Holder, including knowledge that would be acquired by such Persons through their reasonable inquiry.

"Sellers' Representative" means the Equity Holder, as trustee for and on behalf of Sellers.

"Subsidiary" means, with respect to any specified Person, any other Person of which such specified Person, at a given time, directly or indirectly through one or more Subsidiaries, (a) owns at least 50% of the outstanding capital stock (or other shares of beneficial interest) entitled to vote generally, (b) holds at least 50% of the partnership, limited liability company, joint venture or similar interests or (c) is a general partner, managing member or joint venturer.

"Tail Policy" means, for each commercial general liability, umbrella liability, products liability, errors and omissions (professional liability), workers' compensation, property insurance and similar policies which provides insurance coverage to any Seller or the Business prior to the Closing, the "tail" or run-off policy (in the form provided to Buyer) that is purchased by Sellers prior to Closing to maintain such coverage for a term that would end no earlier than the date that is ten (10) years after the Closing Date.

"Tax Return" means all returns, declarations, reports, claims for refund, information returns or other documents (including any attachments, related or supporting schedules or statements of information) filed or required to be filed in connection with the determination, assessment or collection of Taxes of any party or the administration of any Laws relating to any Taxes.

**IN WITNESS WHEREOF**, the undersigned have executed and delivered this Agreement as of the date and year first above written.

**BUYER:**

**BUILDER SERVICES GROUP, INC.**

███████████████████

**SELLERS:**

███████████

**NATE'S INSULATION, LLC**

███████████████

**NACO INVESTMENTS LLC**

███████████████

**EQUITY HOLDER:**

███████████████

[Signature Page to Asset Purchase Agreement]

**IN WITNESS WHEREOF**, the undersigned have executed and delivered this Agreement as of the date and year first above written.

**BUYER:**

**BUILDER SERVICES GROUP, INC.**

[signature redacted]

**SELLERS:**

[signature redacted]

**NATE'S INSULATION, LLC**

[signature redacted]

**NACO INVESTMENTS LLC**

[signature redacted]

**EQUITY HOLDER:**

[signature redacted]

[Signature Page to Asset Purchase Agreement]

# Exhibit 1.01

## Purchased Assets and Excluded Assets

**(a) Purchased Assets**:

The following assets but only to the extent they relate to, or are used, or held for use, in any way and in connection with the Business:

(i) <u>Receivables</u>. All accounts receivable held by Sellers ("<u>Accounts Receivable</u>");

(ii) <u>Tangible Assets; Inventory</u>. All machinery, furniture, furnishings, fixtures, equipment, replacement parts and accessories, motor vehicles, tools, spare parts, computer hardware, office equipment, inventory (including finished goods, raw materials, work in progress, packaging, supplies, and parts) and other tangible assets of every type and kind;

(iii) <u>Marketing Materials and Customer and other Lists</u>. All customer and marketing information, including customer (as well as former customer) lists (including e-mail lists), supplier lists, stationery, forms, brochures, art work, photographs, advertising materials, market research, product and service feedback, product and service reviews and focus group materials;

(iv) <u>Contracts</u>. All agreements, commitments, purchase or sales orders, personal property leases, real property leases, distribution agreements, vendor agreements and other instruments of any kind, whether written or oral (collectively, "<u>Contracts</u>") listed on <u>Schedule 1.01(a)(iv)</u> (the "<u>Purchased Contracts</u>");

(v) <u>Business Names and Other Intellectual Property</u>. All of the following: CCASS/CPARS/PPIRS Evaluations, CAGE Codes and DUNS numbers set forth on <u>Schedule 1.01(a)(v)</u>, patents, patent applications, patent disclosures and inventions (whether or not patentable and whether or not reduced to practice); all registered and unregistered statutory and common law copyrights; all registered and unregistered trademarks, service marks, licenses, logos, sales materials, trade names and fictitious names, including all of Sellers' rights to the names "Nate's Insulation" and "Green Space Insulation", all internet addresses, sites (including websites and any social media sites or pages), domain names and numbers, all registrations, applications and renewals for any of the foregoing; all trade secrets, confidential information, know-how, formulae, manufacturing and production processes and techniques, research and development information, product designations, quality standards, investigations, drawings, specifications, designs, plans, improvements, proposals, technical and computer data; all other intellectual property or intangible rights; software; all assignable license agreements and sublicense agreements to and from third parties relating to any of the foregoing; all other proprietary rights (including all computer software and documentation); and all copies and tangible embodiments of the foregoing (in whatever form or medium);

(vi) <u>Permits</u>. All Permits.

(vii) <u>Deposits and Prepaid Expenses</u>. All rights to deposits and prepaid expenses, Surety Bonds, claims for refunds, rebates, rights of recovery and rights of offset including any recoveries of excess premiums under any Insurance Policy;

(viii) <u>Files, Books and Records</u>. All files, books and records, documents, data, plans, proposals and other recorded knowledge which relate to the Purchased Assets or the Business (excluding any Organizational Documents of Entity Sellers);

(ix) <u>Electronic Copies</u>. All electronic copies of information, user manuals, databases and electronic copies of all original Purchased Contracts (and copies of all correspondence relating thereto);

(x) <u>Claims and Rights</u>. All causes of action, Actions, claims and rights, including all claims and rights against third parties of any nature available to or being pursued by any Seller or any of its Affiliates, whether choate or inchoate, known or unknown, contingent or otherwise related to the Business, any Accounts Receivable or any Purchased Contract;

(xi) <u>Insurance</u>. All benefits, including claims, rights and proceeds, arising from Insurance Policies in connection with or relating to the Business (excluding, for the avoidance of doubt, any insurance policy related to any Employee Plan); and

(xii) <u>Going Concern</u>. The Business as a going concern and all of the goodwill associated with the Business.

**(b) Excluded Assets:**

(i) all Contracts other than Purchased Contracts (the "<u>Excluded Contracts</u>");

(ii) the Organizational Documents of Entity Sellers as well as all minute books, share records and Tax Returns, true and complete copies of which Sellers have provided to Buyer;

(iii) all records of Sellers that Sellers, pursuant to applicable Law, is required to retain in its possession, true and complete copies of which Sellers have provided to Buyer;

(iv) all Employee Plans and all assets and rights of Sellers with respect thereto;

(v) all real property owned by Sellers;

(vi) all Tax attributes of Sellers, including but not limited to any Tax refund, claim, or credit with respect to the periods prior to the Closing Date or for transactions prior to the Closing Date;

(vii) all rights of Sellers and the Equity Holders under this Agreement and the Ancillary Agreement;

(viii) all rights with respect to any Action not related to, or arising out of, the Purchased Assets or the Assumed Liabilities;

(ix) all Cash and bank accounts of Sellers;

(x) all Insurance Policies of Sellers or any of their Affiliates; and

(xi) all assets of the Sellers that are not Purchased Assets and which are not part of, used in, or in any way related to or connected to the Business.