# EXHIBIT 1

# DECLARATION OF NATHAN SOHOCKI

1. My name is Nathan Sohocki. I am over 21 years of age, I am of sound mind, and I am competent to make this declaration. I have personal knowledge of all facts stated in this declaration.

2. I am employed by Builder Services Group, Inc ("BSG") as a Regional Leader.

3. BSG is a leading installer and specialty distributor of insulation and building material products to the North American construction industry, with approximately 235 branches across the country.

4. BSG's business and success depends upon the customer contacts, goodwill, and relationships developed by BSG and its employees, the repeat business of BSG's customers, and the continued confidentiality and ownership of its and its affiliates' proprietary information and trade secrets.

5. BSG's business is highly competitive and, for this reason, BSG has invested substantial time, money, and effort developing and maintaining relationships with its customers, developing its sales processes, sales and marketing strategies, pricing and cost strategies, profit margins and operations.

6. In connection with its growing business and to maintain its competitive edge in the industry, BSG has acquired businesses in smaller markets.

7. On April 17, 2024, BSG entered into an Asset Purchase Agreement with Nate's Insulation, LLC, NaCo Investments LLC, and Nathanial Scrivener to purchase all or substantially all of assets. These purchased assets include, among other things, accounts receivable, tangible assets and inventory, marketing materials, customer lists, contracts, business names and other intellectual property, including trade secrets and confidential information relating to the business operating under the name "Nate's Insulation" or "GreenSpace Insulation." (hereinafter, "GreenSpace").

8. In connection with its business, BSG has developed and/or acquired and maintained certain business information, including, but not limited to, customer lists and documents containing customer identity information; information on pricing, margins, and sales to its customers; marketing information; sales data; financial information concerning BSG and its customers; and personnel information concerning BSG's employees (the "Confidential Information and Trade Secrets").

9. BSG's confidential information and trade secrets includes information acquired as part of the asset purchase of GreenSpace.

10. The Confidential Information and Trade Secrets gives BSG a competitive advantage not enjoyed by other persons not in possession of the Confidential Information and Trade Secrets.

11. The Confidential Information and Trade Secrets is not generally known to, or readily ascertainable through proper means by individuals outside BSG.

12. BSG has invested substantial time, effort, and expense in establishing and developing the Confidential Information and Trade Secrets, and in developing valuable and extensive trade, business, trade name, and goodwill among its customers and in developing contacts and business relationships with its customers.

13. In connection with its business, BSG has developed and/or acquired and maintained certain business information, including, but not limited to, customer lists and documents containing customer identity information; information on pricing, margins, and sales to its customers; marketing information; sales data; financial information concerning BSG and its customers; and personnel information concerning BSG's employees (the "Confidential Information and Trade Secrets").

14. BSG's Confidential Information and Trade Secrets includes information acquired as part of the asset purchase of GreenSpace.

15. The Confidential Information and Trade Secrets gives BSG a competitive advantage not enjoyed by other persons not in possession of the Confidential Information and Trade Secrets.

16. BSG used, and continues to use, reasonable and diligent efforts to maintain and protect the Confidential Information and Trade Secrets, including the use of non-disclosure, non-competition and non-solicitation agreements, password protected computer systems, and confidentiality policies limiting access of Confidential Information and Trade Secrets.

17. The Company requires employees to sign a Confidentiality, Intellectual Property Assignment, Non-Compete and Non-Solicitation Agreement ("Agreement"), pursuant to which they agree not to, among other things, work in the same or similar capacity for a competitor within a 100 mile radius from each location of the Company or its affiliates at which Employee provided services or any district, region, or geographic territory assigned to Employee or in which Employee otherwise worked at any time during the period preceding 12 months the Employee's termination of employment, service or solicit the Company's customers or solicit the Company's employees.

18. On April 17, 2024, BSG entered into an Asset Purchase Agreement with Nate's Insulation, LLC, NaCo Investments LLC, and Nathanial Scrivener to purchase all or substantially all of assets, including, among other things, trucks, office space, intellectual property, inventory, and customer information relating to the business operating under the name "Nate's Insulation" or "GreenSpace Insulation."

19. Upon execution of the Asset Purchase Agreement, BSG became the sole owner of Nate's Insulation's trade secrets and confidential information, as well as all other assets including its phone numbers.

20. Lonnie Dillon was employed by the business operating as "Nate's Insulation" / "GreenSpace Insulation." Dillon was effectively solely responsible for scheduling jobs

and had personal relationships with 75% or more of GreenSpace customers. Dillon made statements to the effect that he was responsible for several million dollars in sales revenue. Dillon was intimately familiar with all aspects of GreenSpace business, including customer preferences, pricing strategies, marketing strategies, supplier information and preferences, and employee compensation and other personnel information.

21. Despite having no ownership in GreenSpace, Dillon held himself out at times to the public as an "owner" of GreenSpace Insulation (including having a business card identifying him as an "owner.") *See* Exhibit A.

22. On April 19, 2024, Dillon accepted BSG's offer of continued employment and signed BSG's Confidentiality and Non-Competition Agreement.

23. On May 21, 2024, Dillon voluntarily resigned from BSG giving "no notice." When I asked about his plans, Dillon misled BSG representatives, saying that he was going to work for a "buddy who did construction."

24. On or about May 23, 2024, Dillon accepted employment with LRC or Goley, related companies that both directly compete with BSG.

25. Like BSG, LRC/Goley specializes in installing insulation products for both residential and commercial buildings, and is thus a direct competitor of BSG.

26. LRC and Goley have corporate offices located in Illinois but provide installation services in and around the Eldon, Missouri area, where Dillon worked while employed with BSG. Although a competitor to BSG, LRC/Goley did not previously have offices or physical operations in or around Miller County prior to employing Dillon.

27. Dillon has represented to one BSG employee that he is now working for Goley Insulation and is starting a new Goley branch/warehouse operation in Eldon, Missouri at or near 720 E. 5th Street Eldon, MO.

28. In total, since Dillon quit, 11 BSG employees have left, most with no-notice. I am aware that at least three of the 11 former employees have been seen working with Dillon at LRC/Goley at 720 E. 5th. Street.

29. Since accepting employment with LRC or Goley, Dillon has accepted phone calls from BSG customers, potential customers, or other business-related contacts from phone numbers (573-434-3588 and 816-760-2854), which are numbers associated with BSG but which ring to Dillon's cell phone. I know this because those were the only numbers on BSG trucks and based on decrease of customer contract, Dillon must be communicating with BSG customers.

30. Dillon, individually and presumably as an agent of LRC or Goley, scheduled - but failed to fulfill – appointments that had been scheduled with customers on behalf of BSG of which he was aware but other BSG representative were not, thereby harming BSG's goodwill and reputation with its customers and potential customers.

DocuSign Envelope ID: 9791753A-4A11-4C71-A6F5-5C840ADE5CED

I have been given an opportunity to review this declaration and make any necessary changes before signing. I declare under penalty of perjury under the laws of the United States that the above statements are true and correct.

DocuSigned by:

*Nathan Sohocki*
—3BD7B23FAF0C49F...

Date: 06-Jun-2024

Nathan Sohocki

DocuSign Envelope ID: 9791753A-4A11-4C71-A6F5-5C840ADE5CED

# EXHIBIT A

DocuSign Envelope ID: 9791753A-4A11-4C71-A6F5-5C840ADE5CED

